# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

|  |  |  |
|---|---|---|
| **MATTHEW BURGE** <br> *Plaintiff* | ) ) ) | Civil Case No. *5:26-cv-00921* |
|  | ) |  |
| v. | ) | COMPLAINT & JURY DEMAND |
|  | ) |  |
| **UNITED SERVICES AUTOMOBILE** ) **ASSOCIATION ("USAA") and** **USAA SEVERANCE PLAN**, | ) ) ) | |
| *Defendants.* | ) | |

## COMPLAINT

Plaintiff Matthew Burge *("Plaintiff"* or "Mr. Burge"), by and through his undersigned counsel, brings this action against Defendants United Services Automobile Association ("USAA") and the USAA Severance Plan (collectively "*Defendants*"), and alleges as follows:

### INTRODUCTION

1. This is an action brought under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. §§ 4301-4335, and related Texas state laws. Plaintiff alleges that Defendants willfully discriminated and retaliated against him on the basis of his military service in the United States Air Force Reserve. The actions brought to this Honorable Court not only culminated in the unlawful denial of reemployment of Mr. Burge but also involves suppressed compensation, misclassification, and ultimately wrongful termination in violation of federal and Texas law.

2. Plaintiff further brings claims for breach of contract under Texas common law, relating to Defendants' failure to honor their severance, bonus, and compensation policies.

3.    Plaintiffs seek compensatory damages, backpay, front pay, liquidated damages, equitable relief, attorneys' fees and costs, and all other relief available under federal and state law.

## NAMED PARTIES

4.    Plaintiff Matthew Burge ("Plaintiff") is an individual who is a resident of San Antonio, Bexar County, Texas. Plaintiff's address is 1211 Crossing Oaks, San Antonio, TX 78253.

5.    Defendant United Services Automobile Association ("USAA") is, upon information and belief, a business entity with its principal place of business located at 9800 Fredericksburg Road, San Antonio, Bexar County, Texas 78288. USAA may be served with process at its principal place of business or wherever it may be found.

6.    Defendant USAA Severance Plan ("USAA Severance Plan") is, upon information and belief, an employee benefit plan administered by USAA, with its principal place of business at 9800 Fredericksburg Road, San Antonio, Bexar County, Texas 78288. USAA Severance Plan may be served with process at its principal place of business or wherever it may be found.

7.    USAA and USAA Severance Plan, collectively, are hereinafter referred to as "Defendants."

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331, as the claims arise under USERRA, a federal statute, and supplemental jurisdiction over related state law claims under 28 U.S.C. § 1367(a).

9.     Venue is proper in the Western District of Texas, San Antonio Division, pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events giving rise to this claim occurred in this District and because USAA is headquartered in this District.

## BACKGROUND

10.    Plaintiff is a decorated officer in the United States Air Force Reserve, with over 27 years of honorable military service. He began his civilian employment with USAA in 2014.

11.    From 2014 through 2023, Plaintiff held several progressively senior roles within USAA, including IT Systems Analyst, Program Manager Senior, Product Owner, Product Development, Scrum Master Senior, and Scrum Master Lead.

12.    Plaintiff was repeatedly deployed/mobilized for military duties, including extended federal orders in support of national security operations. Each time, Plaintiff provided USAA with timely notice and documentation in compliance with USERRA.

13.    Plaintiff alleges and contends that despite his exemplary performance and superior qualifications, Plaintiff was repeatedly denied promotions, had his job responsibilities misclassified, and was paid substantially less than his peers with similar or lesser duties.

14.    Between 2017 and 2019, Plaintiff voiced concerns regarding systemic discrimination related to his military status, including repeated conversations with Assistant Vice President Yhanira Adan and Director Glen Lyday.

15.    In 2019, Plaintiff filed an internal military discrimination complaint. In response, Plaintiff was involuntarily transferred to a new supervisor.

16.    To meet management's request to "become more technical," Plaintiff voluntarily initiated a military occupational specialty change from Intelligence to Cyber Operations, undertaking extensive training at personal and military expense.

17. From 2020 to 2023, Plaintiff served full-time military duty, including Title 10 mobilizations and service with the National Security Agency. Plaintiff provided USAA with proper notice of his return to work for October 30, 2023.

18. On October 13, 2023, (about two weeks prior to his scheduled return), Plaintiff was informed via video conference by HR VP Amy Bauer and HR Executive Peter Chung that he was being terminated in lieu of *"corporate restructuring."*

19. Plaintiff was offered a severance package of $15,976.51, which he declined.

20. USAA made no effort to reemploy Plaintiff in the escalator position he would have attained but for his military service, as required by USERRA § 4313.

21. Plaintiff has exhausted all internal remedies and now brings this action to enforce his federal and state rights and obtain full legal and equitable redress.

## STATEMENT OF FACTS

22. At the time of Plaintiff's onboarding, USAA was aware of Plaintiff's military service status.

23. From 2014 until October 2023, Plaintiff was employed by USAA in progressively responsible roles, including IT Systems Analyst I, Technical Program Manager Senior, Development Product Owner Senior, Scrum Master Senior, and Scrum Master Lead.

24. Between 2015 and 2023, Plaintiff performed multiple military orders, many of which extended for several months at a time, and Plaintiff provided timely and proper notification to USAA regarding these military duties.

25. Throughout Plaintiff's tenure, USAA was fully and continuously aware of Plaintiff's military obligations.

26.     During Plaintiff's employment, USAA assigned Plaintiff to non-standard defined job titles such as "Level IV" and "Senior," which did not correspond to industry or internal comparators performing similar work.

27.     From 2017 onward, Plaintiff raised concerns with Assistant Vice President of Human Resources Yhanira Adan and HR Director Glen Lyday regarding discriminatory treatment connected to Plaintiff's military obligations.

28.     Plaintiff alleges and contends that Defendants management, regularly responded to Plaintiff's concerns with dismissive feedback, without clarifying what was required for advancement.

29.     On or about February 4, 2018, Plaintiff received a pay and benefits increase while holding the position of Technical Project/Program Manager Senior.

30.     Plaintiff alleges and contends that on or about March 4, 2018, USAA realigned Plaintiff's title to Development Product Owner Senior and reduced Plaintiff's pay and benefits without notification or cause.

31.     During this period, Plaintiff undertook critical leadership roles, including guiding an enterprise-level Scaled Agile Framework (SAFe) transformation for the Human Resources Department, completing multiple SAFe roles, and leading complex HR initiatives, while managing responsibilities beyond Plaintiff's job classification, description and title.

32.     Plaintiff's peers with "Lead" titles oversaw fewer teams within the same time zone, while Plaintiff was classified at a lower level and directed approximately 75 personnel across five global time zones.

33.     Plaintiff alleges that despite being told by management to become "more technical," Plaintiff's requests to enroll in USAA's internal software development course were refused by supervisors Mr. Glen Lyday and Ms. Yhanira Adan.

34.     When Plaintiff requested alternative recommendations or a development roadmap to meet the technical expectations, management declined to provide guidance.

35.     Plaintiff identified a solution by seeking and obtaining approval to transition from an intelligence role in the US Air Force Reserve to cyber operations, which required extensive technical training and certification.

36.     Plaintiff informed Lyday and Adan of this *plan in advance,* and both explicitly endorsed it, knowing it would require a prolonged military deployment for formal cyber retraining.

37.     Plaintiff further alleges that USAA did not provide internal support for Plaintiff's technical development but benefitted from the advanced skills Plaintiff acquired at Plaintiff's own expense.

38.     From 2017 through 2019, Plaintiff made efforts to resolve discrepancies regarding classification and compensation internally and filed a formal complaint in 2019.

39.     From 2020 through 2023, Plaintiff served consecutive full-time federal military duty orders, including extended Title 10 tours in cyber operations and a USAFR assignment supporting the National Security Agency.

40.     In March 2021, Plaintiff notified USAA that Plaintiff would return to work at the end of October 2023.

41.     On or about October 13, 2023, approximately two weeks before Plaintiff's scheduled return from military service, Plaintiff was informed by HR Vice President Amy Bauer and HR

Executive Director Peter Chung via video conference that Plaintiff's employment was terminated due to "corporate restructuring."

42. During the termination meeting, Plaintiff was offered a severance of $15,976.51, which Plaintiff did not accept.

43. The severance offer was based, among other things, on earnings that included pay and bonuses reduced due to military differential pay.

44. No efforts were made to reinstate Plaintiff to the position Plaintiff would have held but for military service, and no analysis or opportunity for discussion was provided regarding the termination.

45. During the termination call in lieu of "corporate restructuring", Defendants Management assured Plaintiff that HR would provide assistance in exploring new roles within the company and support Plaintiff's applications for director-level positions.

46. Although there was a brief follow-up from HR, the promised support for internal opportunities did not materialize.

47. Plaintiff alleges that on or about January 8, 2024, Claims Administrator, Ms. Becky Martinez admitted Plaintiff's pay, bonuses, and severance offer were reduced because of Plaintiff's military leave.

48. At no point before Plaintiff's termination did Defendants offer any form of training or retraining to Plaintiff.

49. USAA made no inquiry into what support might be needed to facilitate Plaintiff's return, nor did it engage in meaningful dialogue to explore reemployment options.

50. Plaintiff was not provided documentation of job elimination, warnings, or engagement from USAA's HR department regarding reassignment or retraining.

51. Plaintiff further alleges that received no corrective action or performance deficiency documentation prior to termination.

52. Plaintiff's termination occurred within the 90-day USERRA-protected reemployment window following more than 180 days of military service.

53. Plaintiff's employment was terminated on October 13, 2023, before the expiration of the 90-day reemployment period as prescribed in USERRA.

54. Plaintiff was not provided with any notice, performance-based rationale, or documentation indicating why reemployment would be impractical.

55. Plaintiff's termination occurred within the one-year "for cause" protection period following more than 180 days of military service, and Plaintiff was not given written notice, counseling, or proof of wrongful conduct or poor performance.

56. Plaintiff was not offered retraining or reassignment to a comparable position after military service.

57. USAA did not conduct an escalator assessment or offer alternate or approximate positions to Plaintiff upon return from military service.

58. Plaintiff completed Manager Candidate School through a competitive process, led over 75 personnel, and earned more than 25 advanced Agile and coaching certifications, but USAA refused to recognize these contributions with a change in classification or compensation.

59. Plaintiff's requests for internal training were denied, and Plaintiff was given shifting requirements for advancement.

60. Plaintiff transitioned military specialty to cyber operations with USAA's knowledge and endorsement, which required an extended military absence for retraining and credentialing.

61. Plaintiff's internal complaint in 2019 resulted in an "investigation" involving only two people and no corrective action(s) or plan followed.

62. Plaintiff alleges that he was involuntarily reassigned following the 2019 complaint.

63. Plaintiff was not cited for any performance issues prior to termination.

64. The severance agreement did not contain clear, specific, or unequivocal language waiving USERRA rights and was not supported by consideration equal to or greater than the rights surrendered.

65. Plaintiff alleges and contends that the severance calculation did not consider certain categories of compensation and leave supplementation, including military differential pay.

66. Defendants did not provide explanation of how the severance amount of $15,976.51 was calculated or what benefits were credited or offset.

67. On or about October 10, 2023, Plaintiff emailed Claims Administrator Ms. Becky Martinez asserting that the severance calculation improperly used only Military Pay Supplement hours and requested recalculation based on full base pay.

68. On or about January 8, 2024, Defendants denied Plaintiff's request for increased severance, stating that severance was calculated using amounts actually paid in the prior 12 months, including military pay supplement and differential, and confirming the $15,976.51 offer and COBRA subsidy terms.

69. Plaintiff alleges that the denial letter recited the Plan's "Salary" definition as the average weekly wages paid in the prior 12 months, excluding military pay, and applied it to reject recalculation based on foregone base pay.

70. Plaintiff requested historical pay slips and compensation records for 2014–2023, and HR responded that only pay slips from 2016 forward were available in OneSource.

71.    Defendants Military Leave FAQ states that employees may receive prorated annual bonuses, continue accruing PTO on military leave, and may make up missed retirement contributions upon return.

72.    Plaintiff alleges that USAA reduced pay, bonuses, and severance because of military leave.

73.    Plaintiff alleges that USAA failed to pay military differential pay and 12-week military leave supplements required under federal and state law.

74.    Plaintiff alleges among other things that USAA failed to pay lost vacation and PTO accruals, 401(k) employee contribution, investment growth losses, and Health Savings Account contributions.

## CAUSES OF ACTION AND CLAIMS

### COUNT I- USERRA Reemployment Rights (38 U.S.C. § 4312)

75.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 74, as if fully set forth herein.

76.    Defendants denied Plaintiff advancement, misclassified his position, reduced his pay without notice, refused necessary training, and terminated his employment, with Plaintiff's military service being a motivating factor in these adverse employment actions.

77.    Defendants were aware of Plaintiff's military obligations throughout his employment and took adverse actions against him, to include the prorating of performance bonus, a benefit he was entitled to, because of his military leave status.

78.    Plaintiff alleges that Defendants' stated reasons for these actions were pretextual and inconsistent with their conduct toward similarly situated non-military employees.

79.    Plaintiff's military status was the motivating factor in Defendants' actions.

80. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages, including lost wages, lost benefits, lost promotional opportunities, and other compensatory damages in an amount within the jurisdictional limits of the Court.

81. Defendants' conduct was willful, entitling Plaintiff to liquidated damages under 38 U.S.C. § 4323(d)(1)(C).

### COUNT II- USERRA Reemployment Rights (38 U.S.C. § 4312)

82. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 81, as if fully set forth herein.

83. Plaintiff provided proper advance notice of his military service, served more than 180 days, was released under honorable conditions, and timely notified Defendants of his intent to return to work.

84. Defendants failed to reemploy Plaintiff in the position he would have attained but for his military service (the "escalator position") or a position of like seniority, status, and pay, and instead terminated his employment before the expiration of the 90-day protected reemployment period.

85. As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages, including lost wages, lost benefits, and other compensatory damages in an amount within the jurisdictional limits of the Court.

### COUNT III-USERRA Rights and Benefits (38 U.S.C. § 4316(a))

86. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 85, as if fully set forth herein.

87. Defendants failed to provide Plaintiff with the seniority, rights, and benefits determined by seniority that Plaintiff would have attained if continuously employed, including

promotions, pay increases, pension contributions, performance bonus(es), vacation accrual, and advancement opportunities.

88.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages, including lost compensation, lost benefits, and other compensatory damages in an amount within the jurisdictional limits of the Court.

### COUNT IV- USERRA Discharge Without Cause (38 U.S.C. § 4316(c))

89.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 88, as if fully set forth herein.

90.    Plaintiff served on active duty for more than 180 days and was entitled to protection from discharge without cause for one year following reemployment.

91.    Defendants terminated Plaintiff within this protected period without cause, notice, or documentation of misconduct or business necessity.

92.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages, including lost wages, lost benefits, and other compensatory damages in an amount within the jurisdictional limits of the Court.

### COUNT V-USERRA (38 U.S.C. § 4323(d)(1)(C))

93.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 92, as if fully set forth herein.

94.    Defendants' violations of USERRA were willful, as Defendants knew or showed reckless disregard for whether their conduct was prohibited by USERRA, including persistent misclassification, denial of military leave benefits, and termination within the protected reemployment window.

95.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 92, as if fully set forth herein.

96.    Defendants discharged Plaintiff, at least in part, for the purpose of interfering with his attainment of rights under employee benefit plans, including pension, bonuses, and other ERISA-covered benefits. Plaintiff's termination was proximate to vesting dates and benefit accruals, and Defendants' actions were intended to avoid benefit obligations.

97.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages, including lost benefits and other compensatory damages in an amount within the jurisdictional limits of the Court.

### COUNT VI- Texas Military Leave and Reemployment Rights (Tex. Gov't Code § 437.204)

98.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 97, as if fully set forth herein.

99.    Defendants terminated Plaintiff's employment because he was ordered to authorized military duty and failed to restore him to his employment with no loss of benefits, in violation of Texas Government Code § 437.204.

100.    As a direct and proximate result of Defendants' conduct, Plaintiff suffered damages, including lost wages, lost benefits, and other compensatory damages in an amount within the jurisdictional limits of the Court.

### COUNT VII- Breach of Employment Contract (Texas Common Law)

101.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 100, as if fully set forth herein.

102.   A valid and enforceable contract existed between Plaintiff and Defendants, including company policies, compensation programs, and severance eligibility.

103.   Plaintiff performed under the contract, but Defendants breached by unilaterally reducing Plaintiff's pay, misclassifying his role, excluding protected military service periods from severance calculations, and refusing to pay contingent financial terms upon Plaintiff's return from military duty.

104.   As a direct and proximate result of Defendants' breach, Plaintiff suffered damages, including lost compensation, lost benefits, and other compensatory damages in an amount within the jurisdictional limits of the Court.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Matthew Burge respectfully requests that this Honorable Court enter judgment in his favor and against Defendants United Services Automobile Association and USAA Severance Plan, and award the following relief:

A.  Declare that Defendants United Services Automobile Association and USAA Severance Plan violated Plaintiff Matthew Burge's rights under the Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. §§ 4301–4325, including but not limited to 38 U.S.C. §§ 4311, 4312, and 4316, and Texas Government Code § 437.204, as set forth above.

B.   Enjoin Defendants United Services Automobile Association and USAA Severance Plan from further violating Plaintiff Matthew Burge's rights under USERRA and Texas Government Code § 437.204, and order Defendants to reinstate Plaintiff to the position, seniority, status, and pay he would have attained but for Defendants' unlawful conduct, or, in the alternative, award front pay in lieu of reinstatement.

C.  Direct Defendants United Services Automobile Association and USAA Severance Plan to make Plaintiff Matthew Burge whole by awarding all lost wages, lost benefits, lost promotional opportunities, lost retirement contributions, lost vacation and PTO accruals, lost Health Savings Account contributions, and all other compensation and benefits to which Plaintiff is entitled to total approximately $5,800,000, including but not limited to:

(1) Compensatory damages, including but not limited to lost wages, lost benefits, and other pecuniary losses.

(2) Back pay for all lost wages, bonuses, differential pay, retirement-related losses, and other make-whole amounts recoverable under USERRA and related Texas state laws, from the earliest actionable date through the date of judgment;

(3) Front pay in lieu of reinstatement for a period sufficient to place Plaintiff in the position he would have occupied absent Defendants' unlawful conduct;

(4) Liquidated damages equal to the amount of lost wages and benefits due to Defendants' willful violations of USERRA;

(5)  Equitable relief, including but not limited to reinstatement to the position, seniority, status, and benefits Plaintiff would have held under the USERRA "escalator" principle, or other appropriate injunctive and declaratory relief necessary to make Plaintiff whole;

(6) Pre-judgment and post-judgment interest as allowed by law;

(7) Reasonable attorneys' fees and costs as permitted by USERRA and applicable Texas law and;

(8) Such other and further legal and equitable relief as this Honorable Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.


Date: February 12, 2026,                                        Respectfully Submitted,

                                                       ***/s/Sean C. Timmons***

                                             Sean C. Timmons, Esq., LL.M.
                                          Managing Partner, Tully Rinckey PLLC
                                              Texas Bar No.: 24067908
                                           New York State Bar No.: 5470190
                                   Admitted to Practice in all Texas Federal Courts
                                           18722 University Blvd., Ste. 235
                                                Sugar Land, TX 77479
                                               (832) 240-3273 Phone
                                                 (281) 387-3411 Cell
                                                 (832) 241-5998 FAX
                                              Stimmons@tullylegal.com
                                        *Counsel for Plaintiff, Matthew Burge*


                                              ***/s/ Michelle Alvarado Salermo***

                                           Michelle Alvarado Salermo, Esq.
                                           Associate, Tully Rinckey PLLC
                                                MN Bar No. 0505805
                                           5488 Sheridan Drive Suite 500
                                                 Buffalo NY 14221
                                               Tel: (716) 272-3015
                                               Fax: (716) 462-4455
                                              msalermo@tullylegal.com
                                               *Pending Pro Hac Vice*